United States District Court<br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD JACKSON JR., | NO. C 04-04557 JW |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Richard Jackson Jr. brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Secretary's decision denying his claim for Social Security disability benefits. Plaintiff filed a motion for summary judgment and Defendant filed a cross motion for summary judgment. Based upon all pleadings filed to date, the Court GRANTS Defendant's cross-motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

## II. BACKGROUND

A. <u>Factual Background</u>

Plaintiff was born on May 23, 1952. He graduated from high school and has worked as a journeyman plumber for twenty eight years. In 1988, Plaintiff developed different ailments that prevented him from working on a full-time basis.

In 1988, Plaintiff underwent angioplasty and had his legs operated on for poor circulation.

Then in 1991, he was hospitalized for a heart by-pass surgery. After the by-pass surgery, Plaintiff did not complain of any ailments until 1996, when Plaintiff started to complain of chest wall pain and fatigue. Thereafter, he participated in physical therapy, and was urged to lose weight, stop smoking, and decrease his use of alcohol. Subsequently, Plaintiff filed for social security disability benefits on January 3, 1997.

At the time Plaintiff filed his application, he stated inability to work due to a heart attack, chest pain, soreness in his ribs, dizziness and shortness of breath. Also, in May 1997, Plaintiff had another angioplasty. Then in July 1997, at the request of the Social Security Administration, Plaintiff was examined by neurologist Satish Sharma, M.D. Although Plaintiff was smoking cigarettes and drinking three pints of liquor a week, Dr. Sharma found no abnormal findings on examination. Dr. Sharma opined, however, that Plaintiff was limited to walking thirty minutes at a time for up to four hours a day because of his history of peripheral vascular disease. She also opined that Plaintiff's lifting should be limited to twenty five pounds but, otherwise, found no limitations in Plaintiff's ability to do plumbing work.

Likewise, in September 1997, the state agency medical consultants determined that Plaintiff could perform light work. As defined in the regulations, light work includes lifting twenty pounds occasionally and ten pounds frequently, and standing and/or walking for six hours in an eight hour day. The state agency opinion was affirmed on reconsideration in December 1997.

Medical records from Kaiser Permanente from 1997 and early 1998 showed that Plaintiff felt somewhat better, was working and trying to decrease his smoking, but was noncompliant with his blood pressure medications. Plaintiff worked from April 1997 to August 1997; from November 1997 to May 1998; and from September 1998 to October 1998. He, however, was unclear about how many months he worked in 1999.

The medical records from March 1999 indicated that Plaintiff complained of an ongoing cough, but continued to smoke. Additionally, he had discontinued the blood pressure medications when he "ran out." Plaintiff was then referred to the Health Education department of Kaiser for blood

pressure follow up because of "compliance issues." By September 1999, Plaintiff's hypertension was uncontrolled, and he was again advised to discontinue both alcohol and smoking.

In May 2000, Plaintiff was seen with ongoing chest soreness and reported increase in pain after lifting tools into his truck. Medical records during this time showed that Plaintiff failed to comply with the blood pressure medications. Subsequent medical records showed Plaintiff continued to have problems with compliance. As for Plaintiff's work history in 2000, he testified that there was about one month which he did not work.

In April 2001, the medical records indicated Plaintiff was using a nicotine patch and smoking at the same time. Additionally, he was drinking alcohol and was not compliant with the medications, and his blood pressure was elevated. Yet, Plaintiff testified that he continued to work from January 2001 to March 2001.

In November 2001, Plaintiff was discharged from Kaiser's hypertension care management program because he failed to attend three appointments. A chart note during this period indicated that it was doubtful Plaintiff was taking his prescribed Atenolol and his heart rate was 89; he was unwilling to stop smoking, despite lengthy discussions regarding his health risks; and he refused Colchicine for his gout, preferring to continue on Indocin. Plaintiff's medical condition worsened as he continued not to take the medications.

In January 2002, progress notes from Kaiser indicated that Plaintiff was "very noncompliant" with the medications. According to Dr. Jeffrey S. Javerbaum, Plaintiff sustained a CVA in January 2002. Dr. Javerbaum also opined that Plaintiff was "permanently disabled for his occupation as a plumber" as of March 25, 2003. Nonetheless, Plaintiff had been working since March 2001 through October 16, 2002, even though Plaintiff developed gout problems and suffered a stroke in January of 2002.

The ALJ did not find the fact that Plaintiff sustained a CVA in January 2002 controlling because, although Plaintiff met the criteria of the cardiac listings by January 2002, he worked fairly consistently as a plumber until his May 2002 hospitalization.

3

1    Plaintiff initially alleged disability since April 12, 1996, but through his attorney he
2 subsequently amended that date to March 22, 1998.  The ALJ found that Plaintiff amended the date
3 because he has continued working on and off, and not all of the work performed after his initially
4 alleged onset date could, by definition, constitute "unsuccessful work attempts."  Moreover, the ALJ
5 found that Plaintiff's testimony conflicted with his work records and with the itemization of dates,
6 worked and not worked, submitted by his attorney.

7    The ALJ found that the inescapable conclusion, from the allegations and evidence regarding
8 Plaintiff's work, was that Plaintiff had managed to work on a fairly consistent basis through much of
9 the period of time during which he claimed disability.  Plaintiff made $18,284.03 in the year 1998,
10 $28,213.54 in the year 1999, $52,843.61 in the year 2000, and $54,487.62 in the year 2001.

11    In reliance on Dr. David West's opinion that as of June 2002, Plaintiff's coronary impairment
12 met the criteria of Listing 4.04c, the ALJ opined that Plaintiff's onset date of disability was June 1,
13 2002.  David West, M.D., a board-certified cardiologist, reviewed Plaintiff's medical records and
14 testified at his hearing.

15 B.    Procedural Background

16    On January 13, 1997, Plaintiff filed an application for disability insurance benefits under Title
17 II of the Social Security Act (Act).  The application was denied initially and on reconsideration. After
18 a hearing, the ALJ issued a decision, dated December 23, 1998, that found Plaintiff was not disabled.
19 Thereafter, the Appeals Council vacated the ALJ's decision and remanded for further proceedings
20 because the hearing tape could not be found.  After another hearing, the ALJ issued a decision on
21 September 26, 2003, finding that Plaintiff was disabled beginning on June 1, 2002, but not before.
22 This became the final decision of the Commissioner when the Appeals Council found no basis to
23 disturb it.  Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g), and has moved for
24 summary judgment.  Defendant has also moved for summary judgment.

25                              III.  STANDARDS

26    To be eligible for Social Security disability benefits, the claimant must be disabled.  "A

4

claimant bears the burden of proving that an impairment is disabling." Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). Disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An "impairment" for purposes of this definition "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In addition, a person is disabled only if the impairment is so severe as to preclude not only performance of his previous work, but also, considering his age, education and work experience, performance of "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Court's review of the Administrative Law Judge's decision is limited. The Secretary's determination denying benefits will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g), and if the Secretary applied the proper legal standards. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983). When the proper legal standards are not applied by the ALJ in weighing the evidence and reaching a decision, the decision should be set aside, even if the findings are supported by substantial evidence. Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978); Lebus v. Harris, 526 F. Supp. 56, 59 (N. Cal. 1981).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993); Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976). The reviewing court must "look to the record as a whole and not merely at the evidence lending support to a finding." Cox v. Califano, 587 F.2d 988, 990 (9th Cir. 1978) quoting Walker v. Matthews, 546 F.2d at 818; see also Desrosiers v. Sec. of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). The court cannot substitute its own conclusion for that of the ALJ if there is sufficient evidence to support the ALJ's outcome. Young v.

Sullivan, 911 F.2d 180, 184 (9th Cir. 1990); Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

When a claimant gives testimony regarding subjective pain, the ALJ must analyze several possible bases for discounting or affirming subjective allegations of pain made by the claimant. 20 C.F.R. §§404.1529 and 416.929. The ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a). "Objective medical evidence" is defined in this section as medical signs and laboratory findings. "Other evidence" includes statements from the claimant, statements or records of the treating physician or psychologist and others about the claimant's medical situation, diagnosis, daily activities, efforts the claimant has made to work, and other evidence about how the claimant's impairment affects his or her ability to work. The claimant must show that the objective medical evidence and other evidence demonstrate that he or she has a medical impairment(s) "which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence ... would lead to a conclusion that [the claimant] is disabled." 20 C.F.R. §404.1529(a).

If a claimant meets the threshold requirement of producing objective medical evidence of an impairment that could produce the alleged symptoms to some degree, and there is no evidence of malingering, an ALJ's rejection of subjective pain testimony must be supported by clear and convincing evidence. Swenson v. Sullivan, 876 F.2d 683, 687-688 (9th Cir. 1989). Furthermore, an independent medical advisor's opinion can serve as support for an ALJ decision to deny a finding of disability. Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989). Finally, resolution of conflicts in the evidence and testimony is a function solely for the ALJ. Id. at 750.

Often no one ailment causes the alleged disability, but rather a collection of ailments work together to create one. The ALJ must consider the combined impact of conditions which, although not independently severe enough to cause disability, act in concert to create disability. See Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir. 1987) (discussing the need to consider the impact of evidence of mental impairment, even if alone insufficient to create a disability, in combination with physical

ailments).

## IV.  DISCUSSION

Plaintiff contends that: (A) the ALJ's decision that June 1, 2002 was the proper onset date of disability is not supported by substantial evidence; and (B) the ALJ's rejection of Plaintiff's subjective complaints is inconsistent with the relevant legal standard.

A.  Substantial Evidence

Plaintiff contends that: (1) the ALJ failed to consider the medical evidence as the primary element in the onset date determination; and (2) the ALJ failed to give any consideration to the fact that Plaintiff's work activity amounted to nothing more than unsuccessful work attempts.  Additionally, Plaintiff requests that if he is found "disabled" for the period in question, he should be entitled to a nine month trial work period for the work performed from May 3, 1999 through February 3, 2000.

1.  Alleged Failure to Consider the Medical Evidence

In Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989), the Ninth Circuit held that the ALJ must consider all relevant evidence in determining whether to deny disability benefits.  Additionally, the Ninth Circuit held in Swanson v. Sec'y of Health & Human Services, 763 F.2d 1061, 1065 (9th Cir. 1985), that "the critical date is the date of onset of disability, not the date of diagnosis."

The Court finds that the ALJ did consider the medical evidence as a whole in determining Plaintiff's onset date of disability.  The ALJ's finding that Plaintiff became disabled on June 1, 2002 was based on the opinion of David A. West, M.D., a board-certified cardiologist, who reviewed Plaintiff's medical records and testified at his hearing.  The use of a medical advisor is recommended for determining a claimant's onset date of disability where such onset date must be inferred from the medical evidence.  See Social Security Ruling 83-20.  Additionally, the opinion of Dr. West is substantial evidence because it was based on his review of the clinical evidence.  See Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999).  The record indicates that not only was Dr. West's testimony based on his review of Plaintiff's clinical evidence, he also considered all of Plaintiff's relevant medical and work history.  In short, it is not that Dr. West ignored Plaintiff's previous hospital

admissions and medical evidence in drawing his conclusion of the onset date of disability. Rather, Dr. West opined that Plaintiff's continued noncompliance with his medications and ability to continue working as a plumber outweighed Plaintiff's other medical evidence of disability. For example, when Plaintiff's attorney cross examined Dr. West as to whether the record indicated Plaintiff had problems that met or equaled any listing, Dr. West said "[w]ell, [Plaintiff] is having problems with his blood pressure but there are five or six instances of non-compliances." Therefore, the Court rejects Plaintiff's contention that the ALJ failed to properly consider all the medical evidence presented by Plaintiff.

Nevertheless, Plaintiff claims that the ALJ erroneously required that the impairments reach Listing severity before finding Plaintiff "disabled." Plaintiff does not cite to any authority but asserts, instead, that common sense suggests that Plaintiff did not suddenly find himself meeting the strict criteria of the Listing of Impairments. Contrary to Plaintiff's contention, however, the ALJ did not require the impairments to reach Listing severity before finding Plaintiff disabled within the meaning of the Act. In fact, the ALJ found that, by June 1, 2002, Plaintiff's impairment was no longer reasonably controllable by medication and, therefore, he was disabled within the meaning of the Act. The ALJ's finding was based on Dr. West's opinion that Plaintiff's uncontrolled hypertension was the result of Plaintiff's failure to take the blood pressure medications.

An impairment that is controllable cannot be used as a basis for disability. See Sample v. Schweiker, 694 F.2d 639, 642-644 (9th Cir. 1982) (proper inquiry is whether an impairment is amenable to control); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (impairments controlled by treatment and medications cannot be basis for disability). The ALJ, relying on the opinion of Dr. West, determined that Plaintiff's impairment was reasonably controllable with medication prior to June 2002, and that his impairment was the result of his continued noncompliance with the medications. On the other hand, Plaintiff did not offer the ALJ any specific reasons for the noncompliance. Therefore, the Court finds Plaintiff's claim that the ALJ required his impairments to reach Listing severity to be without merit.

8

### 2. Alleged Unsuccessful Work Attempts

In reliance on 20 C.F.R. §§ 404.1574(a)(1) and Social Security Ruling 84-25, Plaintiff claims that his work activity prior to June 1, 2002 amounted to nothing more than unsuccessful work attempts, and, therefore, the ALJ improperly relied upon those work attempts to deny benefits. An unsuccessful work attempt is defined as periods of time during which a claimant can work but such work will not be considered "substantial gainful activity." See 20 C.F.R. §§ 404.1574(a)(1). On the other hand, at step four of the sequential evaluation procedure[1], the Social Security Administration will not inquire whether a claimant's work is "substantial gainful activity" before finding a claimant disabled. See Barnhart v. Thomas, 540 U.S. 20, 20-21 (2003). Instead, the Administration will find not disabled a claimant "who can do his [or her] previous work." Id.

Whether Plaintiff was performing "substantial gainful activity" during the relevant time period is not at issue, however, because the ALJ did not make a finding at step one of the sequential evaluation procedure. Instead, the ALJ went on to steps two, three, and four of the evaluation procedure, and determined that Plaintiff was not disabled because he had the residual functional capacity to work as a plumber prior to June 2002. See 20 C.F.R. § 404.1520. More specifically, the ALJ found that Plaintiff's sporadic work activity was significant because it showed he was capable of

---

[1] The regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The five steps of the inquiry are:
1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. 20 C.F.R. § 404.1520(a)(4)(I).
2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. 20 C.F.R.§ 404.1520(a)(4)(ii).
3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings)? If so, then the claimant is disabled. If not, proceed to step four. 20 C.F.R. § 404.1520(a)(4)(iii).
4. Does claimant have the residual functional capacity to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. 20 C.F.R. § 404.1520(a)(4)(iv).
5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

1 performing work at the medium exertional level.[2]  The record shows that from 1998 to 2001, Plaintiff
2 had worked for more than three months at a time, and he had more than doubled his earnings, from
3 $18,284.03 to $54,487.62, working as a plumber.

4 Despite the evidence above, Plaintiff points out that Dr. West felt it was "really impossible"
5 for him to offer an opinion as to whether or not Plaintiff could perform the nominal walking and
6 standing requirements of "sedentary work" prior to June 2002.  Plaintiff fails to note, however, that
7 although Dr. West did not explicitly say that Plaintiff *could meet* the requirements of "sedentary"
8 work, Dr. West did not say that Plaintiff *could not meet* the requirements either.  Moreover, the ALJ
9 had evidence of Plaintiff's work history to support the finding that Plaintiff was capable of working as
10 a plumber.

11 Plaintiff also points out that Dr. West stated there were significant clinical signs and findings
12 prior to June 1, 2002, namely chest pains, angioplasty, and coronary bypass.  Furthermore, Plaintiff
13 notes that as early as January 2001, he was hospitalized for chest tightness.  The records indicate,
14 however, that during the three days in which Plaintiff was hospitalized, he had no chest pain.
15 Furthermore, Plaintiff testified that he worked during January, and that he continued to work through
16 March 2001.

17 Finally, Plaintiff relies on Dr. West's testimony that "if you're sick enough to need surgery you
18 can probably meet the listings," and the fact that Petitioner underwent surgery prior to the June 1, 2002
19 onset date.  Again, Dr. West's statement is taken out of context.  Plaintiff fails to note that Dr. West
20 also testified that once Plaintiff had angioplasty surgery, he would not meet the listings anymore.  And,
21 according to the records, Plaintiff underwent two angioplasties, both of them taking place in 1997,
22 which is prior to the March 22, 1998 date of disability claimed by Plaintiff.  In light of the evidence,
23 the Court finds that there is substantial evidence to support the ALJ's determination that Plaintiff had
24 the residual functional capacity to do any work that he has done in the past.

---

[2] As defined in the regulations, medium work involves lifting no more than fifty pounds at a time with occasional lifting of objects weighing up to twenty five pounds.  See 20 C.F.R. 404.1567(c).

10

B.      Subjective Complaints

In rebuttal, Plaintiff requests that the Court grant his motion for summary judgment because the noncompliance was apparently due to factors beyond his control, i.e. addiction to nicotine and running out of medications. The regulatory mandate states that a claimant is not entitled to benefits if, without good reason[3], he refused to follow treatment prescribed by his physician and that treatment could have restored his ability to work. See 20 C.F.R. § 404.1530 (2005). Likewise, the holding in Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), provides that failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.

Plaintiff's nicotine addiction was not used as a basis for denying him benefits. Although the ALJ stated that he "considered other non-medical evidence, including Plaintiff's repeated noncompliance with medical advice and failure to take medications as prescribed," the record does not indicate that the ALJ denied Plaintiff's claim because of his smoking. On the other hand, the ALJ's stated reasons for denying Plaintiff's claim of disability are: (1) consistent and successful work as a plumber; (2) continual failure to follow medical advice and take his medications; and (3) Plaintiff's lack of credibility at the hearing. Plaintiff's contention that running out of medication was beyond his control is, likewise, unpersuasive when there is no evidence that he was unable to obtain more medications. See 20 C.F.R. § 404.1530; See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004).

Additionally, Plaintiff cites to Dr. West's statement: "it would be totally crazy to be willful because this may have been the major factor in causing his stroke[,]" to bolster Plaintiff's assertion that the noncompliance was not willful. Whether Plaintiff's noncompliance was willful is irrelevant,

---

[3]Regulation 20 C.F.R. § 404.1530 provide the following examples of a good reason for not following treatment: (1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
(4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or
(5) The treatment involves amputation of an extremity, or a major part of an extremity.

however, when the plain language of the law requires that Plaintiff meet the burden of showing good cause for the noncompliance. See C.F.R. § 404.1530; See Fair v. Bowen, 885 F.2d at 603. The record is simply devoid of any specific reason why Plaintiff has repeatedly refused to take the medications. Additionally, Plaintiff has provided no authority stating that a claimant's lack of willfulness in failing to comply with the medications constitutes good cause. In short, the ALJ's finding that Plaintiff did not have a good reason for failing to take the medications is supported by substantial evidence.

Nonetheless, Plaintiff argues that the ALJ did not make the required finding that Plaintiff would have been able to work if he had faithfully taken the medications. The Court finds Plaintiff's argument misleading. Although the ALJ did not explicitly determine that the medications would have allowed Plaintiff to work, the record clearly demonstrates that the ALJ relied on Dr. West's opinion that Plaintiff's failure to take the medications was one of the primary causes of his physical impairment. Thus, the ALJ's determination that Plaintiff could have controlled his high blood pressure with the medications is reasonable. The record also demonstrates that each time Plaintiff's blood pressure would increase, there would be a corresponding medical note indicating Plaintiff's noncompliance with the medications. In sum, there is substantial evidence to support the ALJ's finding that had Plaintiff faithfully taken his medications it would have restored his ability to work.

## V.  CONCLUSION

For the reasons set forth herein, the Court denies Plaintiff's motion for summary judgment and grants Defendant's counter-motion for summary judgment.

Dated: September 12, 2005  /s/James Ware
04cv4557ss                  JAMES WARE
                            United States District Judge

1 **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2 Harvey Peter Sackett hps@hpspc.com
Jacqueline Forslund Jacqueline.A.Forslund@ssa.gov
3 Sara Winslow sara.winslow2@usdoj.gov

4 **Dated: September 12, 2005**              **Richard W. Wieking, Clerk**

6                                            **By:__/s/JW Chambers_____**
                                                   **Ronald L. Davis**
7                                                  **Courtroom Deputy**

**United States District Court**
For the Northern District of California